# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JOHN ERICKSON COAHUILA HERNANDEZ, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 15-cv-11460 |
| IRMA BENITEZ CARDOSO, | ) ) | Judge Sharon Johnson Coleman |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner John Erickson Coahuila Hernandez ("Hernandez") has petitioned this Court for the return of his son, AE, to Mexico under the Hague Convention on the Civil Aspects of International Child Abduction, T.I.A.S. No. 11670, 1343 U.N.T.S. 89 (Oct. 25, 1980) ("The Convention"), implemented by the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001 *et seq*. The Court held an evidentiary hearing and allowed post-hearing briefs. Because there is a grave risk that return of AE to Mexico would expose him to physical or psychological harm, the petition is denied.

**Background**

Hernandez and Irma Cardoso ("Cardoso"), the respondent in this action, are the biological parents of AE, who was born in Mexico in August 2008, and MS, who is approximately six years AE's senior. (Dkt. 23 at 13.) Prior to December 2014, Hernandez and Cardoso lived together in Mexico with both children. (Dkt. 15 at 1.) They separated twice, in 2004 and in 2009, and during these periods of separation they shared custody of their children. (Dkt. 23 at 105-106.) In December 2014, Cardoso left Mexico with the children and brought them to Chicago, Illinois. (Dkt. 15 at 1-2.) The parties dispute whether Hernandez knew before their departure that Cardoso and

the children were traveling to Chicago. (*Id.*) However, Cardoso admits that Hernandez did not agree that she could permanently relocate to the U.S with the children. (Dkt. 23 at 117-18.) In August 2015, Cardoso allowed MS to return to Mexico to live with Hernandez while Cardoso and AE continue to live in Chicago. (*Id.* at 101.)

During the hearing, both Hernandez and Cardoso testified that they both used physical discipline on the children, but the parties dispute whose discipline was more forceful. (*Compare id.* at 25-28 *with id.* at 115.) Hernandez testified that he would spank the children with an open hand and described Cardoso's physical discipline as "more harsh" because she would pull her daughter's hair and "really fight with her." (*Id.* at 25-28.) Cardoso testified that she would spank the children with her hand or with a shoe. (*Id.* at 115.) She objected to the way Hernandez disciplined the children, because it was "too much" and he would "hit them very hard" with a belt. (*Id.*) Hernandez denied ever using a belt to discipline the children. (*Id.* at 53.)

Cardoso testified that Hernandez would hit her in front of the children "a lot" and that he wanted the children to watch him hit her. (*Id* at 118.) She would ask him to let the children leave the room when he was hitting her, and he would say "I want the children here. I don't want them to go." (*Id.*) In 2004, Cardoso filed a report with the "conciliation office" of City Hall in Xonacatlan, Mexico, making a record of her allegations that Hernandez subjected to her "physical aggression" and hit her. (Respondent's Ex. A.) Cardoso testified that the impetus for filing the report was an incident where Hernandez slapped, kicked, and hit her with a wooden board in front of their daughter. (Dkt. 23 at 74.) Cardoso testified that when she tried to get away, Hernandez broke through a window, dragged her by her hair, and then raped her. (*Id.*) She testified that he would "always do that [rape her] when he would hit" her because "[t]o him it was like to make me happy." (*Id.*) Hernandez did not testify on the issue of whether he ever hit Cardoso.

2

The Court questioned AE in camera. During the in camera proceedings, AE testified that Hernandez would hit him with a belt if he misbehaved "really bad." (*Id.* at 125.) He further testified that he saw Hernandez hit Cardoso with a belt and also with his hands and had seen Hernandez give Cardoso a black eye. (*Id.* at 125-128.) Seeing Hernandez hit Cardoso made AE "sad." (*Id.* at 126.) AE also testified that he was "[a] little bit" afraid of Hernandez. (*Id.* at 127.) The Court informed the parties that they could file written objections to the questions posed to the minor by the Court after reviewing the transcript of the in camera proceedings. (*Id.* at 129.) No such objections were filed.

**Legal Standard**

To make out a prima facie case for return of a child under ICARA, the petitioner must demonstrate by a preponderance of the evidence that the child was "wrongfully removed." 22 U.S.C.A. § 9003(e)(1). A removal is wrongful if (1) it is in breach of the petitioner's custody rights under the laws of the country that was the child's habitual residence at the time of removal; and (2) the petitioner was actually exercising his or her custody rights when the child was removed. The Convention, Article 3. If the petitioner establishes wrongful removal, the burden shifts to the respondent to show that one of the exceptions to return applies. 22 U.S.C. § 9003(e)(2). The respondent must provide clear and convincing evidence that application of the exception is warranted. *Id.*

**Discussion**

Because Cardoso does not dispute that Hernandez established a prima facie case for wrongful removal, the Court will limit its discussion to the "grave risk of harm" exception that Cardoso presses in her closing brief. The "grave risk of harm" exception provides that return of a wrongfully removed child is not required where "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." The Convention, Article 13b.

Under the law of this circuit, credible testimony of spousal abuse, carried out in the presence of the child at issue, supports a finding that return of the child to the abuser poses a grave risk of at least psychological harm. *Khan v. Fatima*, 680 F.3d 781, 786 (7th Cir. 2012). Cardoso testified credibly that Hernandez would hit her in the presence of AE, with the intention that AE witness the abuse of his mother. This was corroborated by AE's credible testimony that he saw Hernandez hit Cardoso. Although AE's verbal expression about the effect of witnessing Hernandez hit Cardoso was limited (he felt "sad"), the Court observed a significant change in demeanor when AE discussed Hernandez, the domestic violence, and the possibility of returning to Hernandez's custody. AE appeared distressed and teary when discussing these topics. This too supports a finding that returning AE to Hernandez exposes AE to a grave risk of psychological harm.

Contrary to Petitioner's assertions, the Seventh Circuit has rejected the notion that courts should consider whether the petitioner's country of residence can adequately protect the child. *Khan*, 680 F.3d at 788. "If handing over custody of a child to an abusive parent creates a grave risk of harm to the child, in the sense that the parent may with some nonnegligible probability injure the child, the child should not be handed over, however severely the law of the parent's country might punish such behavior." *Van De Sande v. Van De Sande*, 431 F.3d 567, 571 (7th Cir. 2005). Even where the petitioning parent has not seriously physically injured the child in the past, a "propensity for violence," coupled with "the grotesque disregard" for child welfare demonstrated by committing spousal battery in the presence of children, indicates a risk that the petitioning parent will one day "lose control and inflict actual physical injury" upon the child. *Van De Sande*, 431 F.3d at 570. Cardoso's credible testimony that Hernandez harmed AE because of the force with which Hernandez belted AE, together with her testimony about Hernandez's abuse of her, demonstrates a non-negligible probability of Hernandez someday physically injuring AE.

4

The Court gave consideration to Cardoso permitting MS to return to Hernandez's care. However, the Court finds it much more likely that Cardoso exercised poor judgment or made an irrational decision when weighing MS's expressed desires against her needs than it is likely that Cardoso and AE's testimony about experiencing and witnessing domestic violence is false. Cardoso and AE's testimony about the domestic violence, taken as true, provides clear and convincing evidence that there is a grave risk of physical or psychological harm to AE if he is returned to Hernandez's custody.

**Conclusion**

Because the grave risk of harm exception applies, the Court denies the petition.

IT IS SO ORDERED.

_____
SHARON JOHNSON COLEMAN
United States District Judge

DATED:  July 13, 2016